**Sansone v. Sansone**

*Claire Friedman,* for plaintiff.
*Elizabeth Bensinger Weekes,* for defendant.

O'BRIEN, *J.,* January 18, 1991 — On April 4, 1990, plaintiff father filed a complaint for custody

2

with respect to his son Michael, a child born on March 31, 1987, after the parties' separation. The complaint also alleged that defendant mother has a child Thomas and that the mother had failed to disclose the identity of the father of that child when registering his birth. However, the complaint did not seek custody rights with respect to Thomas. On April 26, 1990, this court approved a custody master's recommendation ordering home studies of the parties and an interim custody arrangement with respect to the child Michael. On October 22, 1990, plaintiff father filed a petition to compel HLA blood testing to determine the identity of the father of the child Thomas. Defendant mother filed an answer opposing this request and both parties filed briefs in support of their respective positions. Following oral argument before the court on January 7, 1991, the issue of whether or not to require blood testing with respect to Thomas' paternity is now before the court for disposition.

The Uniform Act on Blood Tests to Determine Paternity provides that it shall be applicable to "all civil matters." 42 Pa.C.S. §6132(a). That act further provides in pertinent part as follows:

"In any matter subject to this subchapter in which paternity, parentage or identity of a child is a relevant fact, the court upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved may, or upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to blood tests. If any party refuses to submit to such tests, the court may resolve the question of paternity, parentage or identity of a child against such party, or enforce its order if the rights of others and the interests of justice so require." 42 Pa.C.S. §6133.

"The presumption of legitimacy of a child born during wedlock is overcome if the court finds that the conclusions of all the experts as disclosed by the evidence based upon the tests show that the husband is not the father of the child." 42 Pa.C.S. §6137.

This statutory provision is usually invoked by a mother seeking support for her child from the alleged father. Recently there have also been an increasing number of cases where paramours have requested blood tests to determine paternity of a child born to a married couple. However, both the procedural posture and the factual scenario of the case at bar are distinctly unique.

Both parties are in agreement as to the facts in the case at bar. Thomas was conceived approximately three months prior to the parties' marriage and born on October 27, 1989, approximately three months after the parties separated. Following Thomas' birth, defendant mother intentionally failed to disclose the identity of the child's father to the Vital Records Division of the Department of Health. The mother listed her maiden name "Frable" as the child's surname. As a consequence, the Department of Health addressed a communication to the plaintiff father which provided in pertinent part as follows:

"The Division of Vital Records has received a Certificate of Live Birth for the above-named child.

"Since the mother of this child is your legal wife, Pennsylvania Law requires that you be notified of your wife's intentions of listing someone other than yourself as the father of the child." (Exhibit A to plaintiff's petition.)

This communication prompted the present proceedings before this court.

The most relevant appellate court decision addressing the propriety of blood tests is our Supreme

Court's ruling in *John M. v. Paula T. and Michael T.*, 524 Pa. 306, 571 A.2d 1380 (1990). In that case, the wife's paramour sought to compel blood testing to establish his paternity of a child born to a married couple. The paramour alleged that the child was conceived during an extramarital affair which was later terminated. In his opinion for the court rejecting the paramour's request for blood tests, Justice Larsen wrote as follows:

"There are other interests at stake in this case besides those of appellant-husband and appellee-putative father. Obviously, the needs and interests of the child are of paramount concern, and the needs and interests of appellant-wife/mother are on a par with the 'putative' and 'presumptive' fathers. There is, in short, a family involved here. A woman and a man who have married and lived together as husband and wife, giving birth to and raising four children, have obvious interests in protecting their family from the unwanted intrusions of outsiders (even ones who have had serious relationships with the mother, father or children). The Commonwealth recognizes and seeks to protect this basic and foundational unit of society, the family, by the presumption that a child born to a woman while she is married is a child of the marriage."

In his concurring opinion, Chief Justice Nix wrote as follows:

"I join in the opinion and result of the majority. I write separately to emphasize that this court has not swayed from the presumption that a child born to a married couple is presumed to be a 'child of the marriage.'

"Irrespective of the legal title given this presumption (whether it be 'presumption of legitimacy' or the presumption that the child born is the 'child of the marriage'), it should remain clear that a child

born to a married couple will be presumed to be the issue of the husband."

The presumption articulated by Justice Larsen and Justice Nix, which is intended to protect the family unit, is one of the strongest presumptions within our law. However, where the reason for the rule does not exist, the presumption becomes less compelling. Where a child is conceived prior to marriage and born following separation of parties married for a brief period, the concern of preserving the family unit is not substantial. Most importantly, the action of the mother in refusing to list her husband as the father of the child on the birth registration, causes her assertion of her right of privacy in opposing the blood tests to ring very hollow.

In view of the unique facts in the case at bar, in particular the failure of defendant wife to identify her husband as the father of the child on the birth registration, we conclude the father's request for blood tests should be granted. The importance of determining the identity of a young child's father in these bizarre circumstances overcomes any legal presumption and outweighs any right of privacy asserted by defendant mother. The determination of paternity will serve the interests of both the parties to this dispute and the child. The ever-increasing importance of heredity in diagnosing and treating medical conditions in the child's future life cannot be overlooked.

## ORDER

And now, January 18, 1991, it is ordered as follows:

6

(1) The petition of Vincent P. Sansone III to compel blood testing is granted and the rule heretofore issued thereon is made absolute.

(2) Roche Biomedical Laboratories is appointed as a qualified examiner of blood types and directed to collect the blood samples of the parents and child in this proceeding, perform scientifically approved tests thereon and furnish a report thereof to all parties in this proceeding or their counsel of record.

(3) In accordance with the provisions of 42 Pa.C.S. §6135, plaintiff Vincent P. Sansone III is directed to pay the costs of the blood testing for all parties.

(4) Melinda L. Sansone is directed to appear at a time and place designated by Roche Biomedical Laboratories together with her child Thomas Ryan Frable for the purpose of providing blood samples to be tested to determine paternity.

(5) Vincent P. Sansone III is directed to appear at a time and place designated by Roche Biomedical Laboratories for the purpose of providing a blood sample to be tested to determine paternity.